UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

NO. 90-3815

R. M. PEREZ & ASSOCIATES, INC.,

Plaintiff,

versus

JAMES WELCH, ET AL.,

Defendants.

*******************************************

VICTORIA A. CARLETON JOLLEY,
Plaintiff-Appellant,
versus

PAINE WEBBER JACKSON & CURTIS, INC., ET AL.,
Defendants-Appellees.

*******************************************

HENRY FRY,
Plaintiff-Appellant
versus

PAINE WEBBER JACKSON & CURTIS, INC., ET AL.,
Defendants-Appellees.
*******************************************

HUEY CLEMONS,
Plaintiff-Appellant,
versus

PAINE, WEBBER JACKSON & CURTIS, INC., ET AL.,
Defendants-Appellees.

*******************************************

VALERIE W. MILLS,
Plaintiff-Appellant,
versus

PAINE WEBBER, JACKSON & CURTIS, INC., ET AL.,
Defendants-Appellees.

```
*****************************************

            CHARLES S. PENDLETON,
                              Plaintiff-Appellant,
                    versus

PAINE WEBBER JACKSON & CURTIS, INC., ET AL.,
                              Defendants-Appellees.

*****************************************

              EUGENE J. YOUNG,
                              Plaintiff-Appellant,
                    versus

PAINE WEBBER JACKSON & CURTIS, INC., ET AL.,
                              Defendants-Appellees.
*****************************************

            STANLEY J. GARDEMAL,
                              Plaintiff-Appellant,

                  versus

PAINE WEBBER JACKSON & CURTIS, INC., ET AL.,
                              Defendants-Appellees.
*****************************************

              GILBERT DISOTELL,
                              Plaintiff-Appellant,

            versus

PAINE WEBBER JACKSON & CURTIS, INC., ET AL.,
                              Defendants-Appellees.
```

---

NO. 91-3119

---

```
    VICTORIA A. CARLETON JOLLEY, ET AL.,

                              Plaintiffs-Appellants,

                  versus

      PAINE WEBBER JACKSON & CURTIS, INC.
              and JAMES WELCH,

                              Defendants-Appellees,

*****************************************
```

2

VICTORIA A. CARLETON JOLLEY, ET AL.,

Plaintiffs-Appellees
Cross-Appellants,

versus

PAINE WEBBER JACKSON & CURTIS, INC.,

Defendant-Appellant
Cross-Apellee.

Appeals from the United States District Court
for the Eastern District of Louisiana

Before THORNBERRY, KING, and DEMOSS, Circuit Judges.

THORNBERRY, Circuit Judge:

This is an appeal from the final disposition of several consolidated securities fraud cases. The cases against Welch and Paine Webber have been percolating in the federal court system for seven years; only a few isolated issues are presented here for review. We affirm on all issues except the district court's award of attorneys' fees.

I.    Background

The plaintiffs are eight customers of James Welch, a former Paine Webber stockbroker. The eight plaintiffs--Huey Clemons, Gilbert Disotell, Henry Fry, Stanley Gardeman, Victoria Carleton Jolley, Valerie Mills, Charles Pendleton, and Eugene Young--sued James Welch and Paine Webber for violations of RICO and federal and state securities laws. After the plaintiffs filed suit, Paine

Webber moved to compel arbitration of the claims against it. Welch did not seek arbitration of the claims against him. The court referred Paine Webber's motion to a magistrate, who recommended that the motion be denied. The district court disregarded the magistrate's recommendation and granted Paine Webber's motion to compel arbitration as to seven of the eight plaintiffs, leaving one suit by Plaintiff Mills pending in the district court against Paine Webber in addition to the eight against Welch. The plaintiffs appealed this ruling to a prior panel of the Fifth Circuit, which found that it lacked jurisdiction to hear the appeal. Jolley v. Paine Webbber Jackson & Curtis, 864 F.2d 402 (5th Cir.), opinion supplemented, 867 F.2d 891 (5th Cir. 1989). In this appeal, however, we will consider the district court's ruling on Paine Webber's motion to compel arbitration.

All claims against Welch and Mills' claims against Paine Webber were tried to a jury in the summer of 1988. The jury found in favor of the plaintiffs on the securities claims, but rejected the plaintiffs' RICO claims. The district court entered the jury's award of damages in the amount of $274,610.88, and the Fifth Circuit affirmed. Jolley v. Paine Webber Jackson & Curtis, 904 F.2d 988 (5th Cir. 1990), cert. denied, 111 S. Ct. 762 (1991). The district court subsequently awarded attorneys' fees to the plaintiffs: $193,149.50 for all plaintiffs against Welch and Paine Webber jointly, and $57,264.12 against Welch only. The district court later reduced the fee award against Paine Webber and Welch jointly from $193,149.50 to $168,639.37. The district court also

denied an award of costs for the plaintiffs because they failed to submit a detail of costs along with their application for fees and costs. In this appeal, the parties challenge the district court's rulings on fees and costs.

The plaintiffs also appeal the disposition of the claims that were sent to arbitration. The arbitrators awarded $146,425.61 in damages for the plaintiffs. The arbitrators also denied fees because they found that both parties had a legitimate claim to fees, and their fee awards were offsetting. Paine Webber moved to confirm the arbitrators' award; the plaintiffs sought to vacate or modify the award. The district court granted Paine Webber's motion, confirming the arbitrators' award in its entirety. The plaintiffs challenge the district court's confirmation of the award, and both sides seek attorneys' fees in connection with the arbitration proceedings.

## II. The Arbitration Proceedings

### A. Paine Webber's Motion to Compel Arbitration

The plaintiffs contend that the district court erred by rejecting the magistrate's Report and Recommendation and compelling seven of the eight plaintiffs to submit their claims against Paine Webber to arbitration. The magistrate that conducted an evidentiary hearing on the issue of arbitrability recommended that none of the eight plaintiffs' claims against Paine Webber were subject to arbitration. Regarding one plaintiff, Mills, the magistrate found that Paine Webber failed to introduce any documents proving that she had agreed to arbitrate any claims and

5

that she was therefore entitled to pursue her claims against Paine Webber in front of a jury. The magistrate also found, as a matter of law, that three plaintiffs had established a prima facie case of fraud in the factum, rendering their arbitration agreements void. Furthermore, the magistrate found that the unauthorized transactions that all eight plaintiffs complained of could not have been within the scope of the agreements and therefore, that none of the eight plaintiffs' claims were subject to arbitration.

The district court partially rejected the Magistrate's Report and Recommendation, finding that seven of the eight plaintiffs were required to submit their claims against Paine Webber to arbitration, while the remaining plaintiff, Mills, was entitled to assert her claims in district court. The district court's interpretation of the documents containing the arbitration agreements is a question of law subject to de novo review. Webb v. Carter Constr. Co. v. Louisiana Central Bank, 922 F.2d 1197, 1199 (5th Cir. 1991). After a thorough review of the record, we find that the district court did not err in compelling seven of the eight plaintiffs to submit their claims against Paine Webber to arbitration.

Courts perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute. First, the court must determine whether the parties agreed to arbitrate the dispute. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 105 S.Ct. 3346, 3353 (1985). Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy

6

renders the claims nonarbitrable.  Id. at 3355.  We first consider whether, by signing the various documents containing arbitration agreements, the plaintiffs agreed to arbitrate the claims that they assert against Paine Webber.

Seven of the eight plaintiffs agree that each signed at least one document (a Client Agreement, Customer Agreement, or Option Agreement) containing an arbitration clause.  Some plaintiffs contend, however, that their respective signatures were obtained by fraud, and all assert that the transactions complained of are outside the scope of the arbitration agreement.  Those plaintiffs alleging fraud insist that the fraud constitutes fraud in the factum rather than fraud in the inducement.  They argue that the distinction between fraud in the factum and fraud in the inducement is determinative of whether they can be compelled to arbitrate.

We disagree that the type of fraud alleged is determinative of arbitrability.  Under Prima Paint Corp. v. Flood and Conklin Mfg. Co., 388 U.S. 395, 404, 87 S.Ct. 1801, 1806 (1967), and its progeny, the central issue in a case like this is whether the plaintiffs' claim of fraud relates to the making of the arbitration agreement itself or to the contract as a whole.  See C.B.S. Emp. Fed. Cr. Union v. Donaldson, Et Al., 912 F.2d 1563 (6th Cir. 1990); Bhatia v. Johnson, 818 F.2d 418 (5th Cir. 1987) ("We must determine whether Bhatia's complaint is directed at the entire contract or only the arbitration clause.").  If the fraud relates to the arbitration clause itself, the court should adjudicate the fraud claim.  If it relates to the entire agreement, then the Federal

7

Arbitration Act requires that the fraud claim be decided by an arbitrator. C.B.S. Emp. Fed. Cr. Union v. Donaldson, Et Al., 912 F.2d 1563, 1566 (6th Cir. 1990).

We find that the fraud alleged by the plaintiffs relates to the Agreements as a whole and not to the arbitration clauses themselves. Only three of the plaintiffs put forth evidence regarding the circumstances surrounding the signing of the various agreements. Victoria Carlton Jolley testified that she signed the documents before reading them because she trusted Welch and he was in a hurry to get back to his office. She testified that he never mentioned margin, options, or arbitration. Plaintiff Stanley Gardemal testified that he signed the documents because Welch caught him at a weak moment. Welch had called him repeatedly to say that if Gardemal signed the agreements, Welch could transfer some money he had made on a transaction into Gardemal's account. Gardemal agreed to sign the papers but thought that they pertained only to the transaction that had already been completed. Gardemal stated that he never knew he was agreeing to an arbitration clause. Plaintiff Gilbert Disotell testified that although he signed the option agreement, he did not know about any risks involved in signing the agreement and that Welch did not tell him that the agreement contained an arbitration clause. He signed the agreement because he trusted Welch.

The testimony of the plaintiffs clearly indicates that the fraud they complain of goes to the Client Agreements and Option Agreements in their entirety and not to the arbitration clauses

8

themselves. The plaintiffs' allegations that they did not read or understand the documents and that Welch did not explain the documents to them does not allege fraud in the making of the arbitration agreements, but goes to the formation of the entire contracts. Therefore, the allegations are arbitrable.

Each of the plaintiffs also argue that their claims against Paine Webber are outside the scope of the arbitration clauses. The clauses are found in paragraph 14 of the Customer Agreement, paragraph 15 of the Client Agreement or paragraph 18 of the Option Agreement. The Customer Agreement and the Client Agreement contain identical arbitration clauses providing that "[a]ny controversy between us arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, . . . ." The Option Agreement contains a slightly different arbitration clause that states, "[a]ny controversy arising out of the handling of any of the transactions referred to in this Agreement shall be settled by arbitration . . . ." This court has found unauthorized trading claims under § 10(b) of the 1934 Act and RICO claims to be within the scope of similar arbitration agreements. See Mayaja v. Bodkin, 803 F.2d 157, 161 (5th Cir. 1986). Therefore, we find the plaintiffs' claims to be within the scope of the arbitration agreements at issue here.

Finally, plaintiff Henry Fry argues that although he signed the Client Agreement, he did not sign it until after the transactions he complains of had taken place, and therefore, his claims are not subject to arbitration. This argument ignores the

9

language of the Agreement that provides: "In consideration of your
. . . continuing an account or accounts in my name or for me for
the purchase or sale of property, I agree with you . . . [that] all
my relations and dealings with [you] are subject to this agreement
. . . ." Fry's argument that his claims are outside the scope of
the agreement is without merit. See Shotto v. Laub, 632 F.Supp.
516, 522 (D.Md. 1986) ("[W]hether plaintiffs signed the agreements
before or after opening their accounts, or even before the claim
arose, does not change the fact that they signed written agreements
to arbitrate claims arising out of their account.").

B.    Review of the Arbitrators' Award

The plaintiffs challenge the arbitrators' application of
collateral estoppel and respondeat superior to the issues presented
in the arbitration proceedings. Acknowledging the limited nature
of judicial review of arbitration awards, the plaintiffs contend
that the arbitrators "manifestly disregarded" both of these legal
doctrines in reaching its decision. We find that the plaintiffs
have failed to show the extreme deficiency in the arbitrators'
decisionmaking process necessary for a federal court to overturn
the arbitrators' award.

The "manifest disregard" doctrine originated in the Supreme
Court's decision in Wilko v. Swan, 74 S.Ct. 182 (1953). The
Supreme Court there stated that "interpretations of the law" by
arbitrators were not subject "to judicial review for error in
interpretation." Id. at 187-88. A legal error would present
grounds for vacating an arbitrator's award only when the

10

arbitrator's failure to decide in accordance with the law was clearly apparent, constituting "manifest disregard" as opposed to mere misinterpretation.  Id. at 187.  A leading circuit court decision applying the manifest disregard doctrine, Merrill Lynch, Pierce, Fenner & Smith v. Bobker, 808 F.2d 930 (2d Cir. 1986), explained the doctrine as follows:

> "Manifest disregard of the law" by arbitrators is a judicially-created ground for vacating their arbitration award, which was introduced by the Supreme Court in Wilko v. Swan.  It is not to be found in the federal arbitration law.  9 U.S.C. § 10.  Although the bounds of this ground have never been defined, it clearly means more than error or misunderstanding with respect to the law.  The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator.  Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it.  To adopt a less strict standard of judicial review would be to undermine our well established deference to arbitration as a favored method of settling disputes when agreed to by the parties.  Judicial inquiry under the "manifest disregard" standard is therefore extremely limited.  The governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable.  We are not at liberty to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of laws urged upon it.

Bobker, 808 F.2d at 933-34 (citations omitted).  Applying this standard of review, we agree with the district court that the arbitrators did not manifestly disregard the doctrines of collateral estoppel or respondeat superior.

The plaintiffs argued before the arbitrators that collateral estoppel barred reconsideration of the fact issues regarding Welch's fraud and the amount of the plaintiffs' damages, which were determined by the jury in the federal district court proceedings.

11

The plaintiffs' related respondeat superior argument sought to have liability imposed upon Paine Webber for the amount of the district court judgments against Welch. Both sides briefed these issues extensively prior to the arbitration hearing. The arbitrators found that Paine Webber was vicariously liable for Welch's culpable acts; however, they rejected the plaintiffs' argument that collateral estoppel barred reconsideration of the plaintiffs' claims against Welch. The arbitrators' findings of culpability by Welch were much more favorable to Welch and Paine Webber than the jury's findings in the district court. Thus, Paine Webber was held vicariously liable for Welch's acts, but the arbitrators' damage award was much lower than the jury's award in the district court.

The plaintiffs argued in the district court that the arbitrators manifestly disregarded the law of collateral estoppel. The district court found not only that the arbitrator had not manifestly disregarded the law, but also that the arbitrators' interpretation of collateral estoppel doctrine was correct. Because we feel that such an inquiry is beyond the scope of the courts' review, we do not address the latter findings of the district court. We uphold the district court's affirmance of the arbitrators' award, however, because the application of collateral estoppel to Paine Webber, who was a non-party to the district court proceedings as to the seven plaintiffs present in the arbitration proceedings, is by no means the type of well-settled legal principle that the arbitrators could be said to have "disregarded". See Freeman v. Lester Coggins Trucking, Inc., 771 F.2d 860 (5th

12

Cir. 1985); Hardy v. Johns-Manville Sales Corp., 681 F.2d 334, 339 (5th Cir. 1982). The application of collateral estoppel is largely within the discretion of the tribunal considering the issue. Parklane Hosiery Co. v. Shore, 99 S.Ct. 645, 652 (1979). Because the plaintiffs have not sustained their burden of showing that the arbitrators willfully ignored a clearly governing legal principle, the district court was correct in confirming the arbitrators' award. See Jenkins v. Prudential-Bache Securities, Inc., 847 F.2d 631, 634 (10th Cir. 1988).[1]

C.    The Award of Offsetting Fees

Both sides sought attorneys' fees in the arbitration proceedings. The arbitrators found merit in both sides' arguments for fees, and without determining the appropriate amount of fees to which each side was entitled, found that the fees were offsetting. The arbitrators therefore awarded no fees to either party. The plaintiffs appeal the district court's confirmation of the arbitrators' decision regarding fees.

We agree with the arbitration panel that the plaintiffs were entitled to attorneys' fees for violations of Louisiana Securities Law. La. R. S. 51:714A (1987). With regard to the defendant's claim for attorneys' fees, the arbitration panel found merit in the defendant's argument that the plaintiffs litigated the issue of the

---

[1] Plaintiffs' complaint about the application of vicarious liability does not stand once the collateral estoppel issue is decided. The arbitrators held Paine Webber vicariously liable for Welch's culpable acts; they just found fewer culpable acts and a smaller amount of damages than the jury found in the district court proceedings.

13

arbitrability of the agreements without a reasonable basis, and the panel recognized an award of attorneys' fees for the defendants for defending against this issue. Again, we cannot agree with the plaintiffs that the arbitrators "manifestly disregarded" the law with regard to this issue. See Washington Hospital Center v. Service Employees International Union, Local 722, AFL-CIO, 746 F.2d 1503, 1509-13 (5th Cir. 1984).

Likewise, we cannot agree with the plaintiffs that the arbitrators erred in finding that the parties' entitlement to attorneys' fees offset.[2] A determination of the amount of attorneys' fees is a finding of fact. See Stelly v. Commissioner, 761 F.2d 1113, 1116 (5th Cir.), cert. denied, 471 U.S. 851 (1988); Seamon v. Vaughn, 921 F.2d 1217, 1218 (11th Cir. 1991). This court must accept findings of fact made by the arbitration panel. International Union of Elec., Radio & Mach. Workers, Local 1013 v. Ingram Mfg. Co., 715 F.2d 886, 890 (5th Cir. 1983), cert. denied, 466 U.S. 928 (1984); Todd Shipyards Corp. v. Cunard Line, Ltd., 943 F.2d 1056, 1058 (9th Cir. 1991); The Lattimer-Stevens Co. v. United Steel Workers of America, 913 F.2d 1166, 1168 (6th Cir. 1990) (citing International Brotherhood of Elec. Workers, Local 429 v. Toshiba American, Inc., 879 F.2d 208 (6th Cir. 1989).

---

[2]The plaintiffs contend that they were denied attorneys' fees contrary to the requirements of the Louisiana statute. This is incorrect. The offsetting award suggests that they were awarded fees equal to those awarded to the defendants. The plaintiffs' contention may therefore be characterized more properly as a quarrel with the amount of fees granted.

14

Moreover, as a matter of general principles, arbitrators may render an award without disclosing their rationale for doing so, "and when they do, courts will not inquire into the basis of the award unless they believe that the arbitrators rendered it in 'manifest disregard' of the law or unless the facts of the case fail to support it." Koch Oil, S.A. v. Transocean Gulf Oil Co., 751 F.2d 551, 554 (2d Cir. 1985); cf. Delaware Dep't of Health and Social Services v. United States Dep't of Education, 772 F.2d 1123, 1138 (3d Cir. 1985) ("[I]f an award of attorneys' fees was legally permissible, on any basis, for the services performed . . . we could not find arbitrary or capricious action or an abuse of discretion."). Indeed, the arbitrators recognized that the plaintiffs were entitled to attorneys' fees pursuant to Louisiana Revised Statute 51:714A. The plaintiffs have not shown that the amount awarded to them was rendered in manifest disregard of the Louisiana statute or other law, or that it lacked a factual basis. Accordingly, we affirm the district court's confirmation of the arbitrators' fee award.

III. Costs and Fees in the District Court Proceedings

Subsequent to the jury trial in the district court, the district judge entered an order awarding attorneys' fees for all eight plaintiffs in the total amount of $250,413.62 for reasonable expenses incurred in the district court proceedings. Of that amount, Paine Webber and Welch were jointly liable for $193,149.50, and Welch was individually liable for $57,264.12. After further briefing, the district court reduced the amount of joint liability

15

to $168,639.37. The plaintiffs appeal the district court's award, claiming that the district court improperly applied the Johnson factors when it reduced the plaintiffs' requested fee award. Paine Webber also appeals the district court's determination of fees, contending that the fee award should be proportionate to damages recovered. Paine Webber further contends that the fee award should be apportioned among the plaintiffs, and because Paine Webber defended only against Plaintiff Mills, Paine Webber claims it should be liable only for fees attributable to the prosecution of Mills's claims. We review the district court's determination of attorneys' fees for abuse of discretion; we review any factfindings supporting its award only for clear error. See Von Clark v. Butler, 916 F.2d 255, 258 (5th Cir. 1990).

The district court, in a 37-page opinion followed by 4 appendices totalling an additional 40 pages, analyzed the plaintiffs' fee request under the factors recognized by the Louisiana Supreme Court in Leenerts Farms, Inc. v. Rogers, 421 So.2d 216, 219 (La. 1982) and the Fifth Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). The district court reduced the number of hours reasonably billed for some of the time devoted to litigating the arbitrability of the plaintiffs' state law claims. After reviewing the record on this issue, we cannot say that the district court clearly erred in its finding that the plaintiffs were unreasonable in their continued litigation of this issue. Furthermore, the district court did not clearly err in its finding that certain identified billing entries

16

were overly vague. We find no abuse of discretion in the district court's determination of the "lodestar" (reasonable hours expended multiplied by a reasonable hourly rate).

The plaintiffs also object to the district court's reduction of the lodestar based on the plaintiffs' limited success and on a comparison of awards in similar cases. We take note that "[t]here is a 'strong presumption' that the lodestar figure . . . represents a 'reasonable' attorney's fee," D'Emanuele v. Montgomery Ward & Co., Inc., 904 F.2d 1379, 1384 (9th Cir. 1990), and that "upward adjustments of the lodestar are appropriate only in certain 'rare' and 'exceptional' cases." Alberti v. Klevenhagen, 896 F.2d 927, 930 (5th Cir. 1990). The district court reduced the lodestar for Paine Webber by 60%, and the lodestar for Welch by 45%, the difference explained by the differing number of plaintiffs pursuing claims against the two defendants. However, the district court failed to take into consideration the substantial number of hours reasonably devoted to issues concerning only Paine Webber, such as arbitrability and vicarious liability. Furthermore, the magnitude of the reduction for limited success overstates the limited nature of the plaintiffs' recovery. The plaintiffs prevailed on the securities claims; the issues they lost on were peripheral to the securities claims. Finally, we note that a number of issues presented by the plaintiffs as a justification for an upward adjustment of the lodestar were rejected by the district court without appropriate factual support. We find that the district

17

court abused its discretion in reducing the plaintiffs' lodestar. See Cobb v. Miller, 818 F.2d 1227, 1235 (5th Cir. 1987).

Paine Webber also appeals the district court's decision on attorneys' fees by, first, claiming that a rule of proportionality prevents the district court from awarding fees so far in excess of damages recovered.[3]  Paine Webber bases this argument on the Supreme Court's decision in City of Riverside v. Rivera, 106 S.Ct. 2686 (1986).  However, we rejected this interpretation of Rivera in our 1987 opinion in Cobb v. Miller, 818 F.2d 1227, 1234 (5th Cir. 1987).  Furthermore, we agree with other circuits addressing the issue that Rivera provides no support for a rule of proportionality in cases outside of the civil rights context.  See Northeast Women's Center v. McMonagle, 889 F.2d 466, 472-73 (3d Cir. 1989).

Paine Webber also argues that the district court should have apportioned the fee award between it and Welch based on a pro rata division of the fees among the plaintiffs.  Under this theory, Paine Webber would be liable for only one-eighth of all of the fees awarded because only one of the eight plaintiffs pursued claims against Paine Webber.  The district court rejected this argument based on our decision in Abell v. Potomac Insurance Co., 858 F.2d 1104 (5th Cir. 1988).  We agree with the district court that Abell is applicable, and we find Paine Webber's arguments to the contrary unpersuasive.

---

[3] Paine Webber makes the comparison between the damages recovered against it by Mrs. Mills, approximately $23,000, and the fees assessed against Paine Webber, which were $168,639.37.

18

Based on the foregoing, we find that the district court abused its discretion by reducing the plaintiffs' lodestar by the percentages noted above. We therefore vacate the district court's judgments regarding attorneys' fees and remand with instructions to enter an award of attorneys' fees for the full amount of the lodestar as determined by the district court in its Minute Entry dated February 22, 1991.

As a final matter, the plaintiffs contest the district court's refusal to reconsider its decision denying costs. The district court initially denied costs to the plaintiffs when they failed to submit documentation of their costs after they were notified that their application omitted any substantiation of costs. Upon a motion to reconsider this decision, the district court found that the plaintiffs had failed to show good cause for their failure to document their claim for costs, and refused to allow plaintiffs to supplement their application with the appropriate accounting of costs. We cannot assess error in the district court's refusal to reconsider the issue of costs. See Nelson v. James, 722 F.2d 207, 208 (5th Cir. 1984); Copper Liquor, Inc. v. Adolph Coors Co., 684 F.2d 1087 (5th Cir. 1982).

For all of the foregoing reasons, we remand to the district court for the entry of judgment for attorneys' fees in the district court proceedings based on the lodestar calculation.

AFFIRMED in part; REMANDED in part.

19