PRUDENTIAL SECURITIES IN-
CORPORATED and William
Erik Byrne, Relators,

v.

The Honorable J. Manuel BANALES,
Judge, 105th Judicial District Court of
Nueces County, Texas, Respondent.

No. 13–93–255–CV.

Court of Appeals of Texas,
Corpus Christi.

July 29, 1993.

Rehearing Overruled Sept. 9, 1993.

David B. Sterling, Jeffrey R. Elkin, Jan Nenninger, Baker & Botts, Houston, for relators.

Donald M. Fefferman, Fefferman & Rehler, Corpus Christi, for real parties in interest.

Before SEERDEN, GILBERTO HINOJOSA, and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

SEERDEN, Justice.

In this original mandamus proceeding, Prudential Securities Inc. and William Byrne (collectively "Prudential") request this Court to direct Judge Banales to vacate his order denying their motion to compel arbitration in the underlying lawsuit between Prudential and A.P. and Betty Jo Johnston. We conditionally grant the writ.

Several years ago, the Johnstons opened a brokerage account with Prudential[1] under which they signed a joint account agreement, one clause of which provides that "[a]ny controversy arising out of or relating to [their] account, to transactions with or for [them] or to this agreement or the breach thereof, shall be settled by arbitration." Nevertheless, the Johnstons subsequently sued Prudential and their broker, Byrne, for mishandling their account under theories of fraud, securities fraud, violation of the DTPA, breach of fiduciary duties, negligence, and breach of contract.

Prudential and Byrne promptly moved to compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1–16. They attached to the motion a copy of the joint account agreement and arbitration clause in question, as verified by affidavit of an officer of Prudential. In answer to Prudential and Byrne's motion to compel arbitration, the Johnstons contended that their execution of the agreement to arbitrate was fraudulently obtained because of its placement in the contract and the failure of the broker to explain or point out the arbitration clause, and that their right to a judicial determination of the DTPA claims could not be waived by an arbitration clause. The trial court denied the motion to compel arbitration based on the pleadings and arguments of counsel.

Mandamus issues only to correct a clear abuse of discretion or violation of a legal duty when that abuse cannot be remedied by appeal. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992). Since Texas does not allow interlocutory appeal from a trial court's action on a request to compel arbitration pursuant to the Federal Arbitration Act, mandamus will issue when a trial court erroneously denies a motion to compel arbitration under the Federal Act. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992); *Prudential–Bache Securities, Inc. v. Garza*, 848 S.W.2d 803, 806 (Tex.App.—Corpus Christi 1993, original proceeding).

The Federal Arbitration Act is national substantive law governing questions of the validity and the enforceability of arbitration agreements under its coverage. *Moses H. Cone Memorial Hosp. v. Mercury Const.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *Prudential–Bache Securities, Inc.*, 848 S.W.2d at 807.[2] Arbitration is favored under both state and federal law. *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Jack B. Anglin Co.*, 842 S.W.2d at 268; *Prudential–Bache Securities, Inc.*, 848 S.W.2d at 807. Thus, the party opposing arbitration generally has the burden to disprove the movant's contention that a given claim is subject to a

---

1. Which at that time was doing business as Bache Halsey Stuart Shields, Inc.

2. There is no dispute that the present arbitration clause was a part of a contract evidencing a

transaction involving commerce and thus falls within the coverage of the Federal Arbitration Act, 9 U.S.C. § 2. *See Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269–70 (Tex.1992).

valid arbitration agreement. *Hearthshire Braeswood Plaza Limited Partnership v. Bill Kelly Co.*, 849 S.W.2d 380, 386 (Tex. App.—Houston [14th Dist.] 1993, n.w.h.); *Merrill Lynch, Pierce, Fenner, and Smith, Inc. v. Longoria*, 783 S.W.2d 229, 231 (Tex. App.—Corpus Christi 1989, original proceeding). Moreover, once the trial court determines that a valid agreement to arbitrate exists and that the claims raised fall within the scope of that agreement, it has no discretion but to compel arbitration and stay its proceedings pending arbitration. *Prudential–Bache Securities, Inc.*, 848 S.W.2d at 806; *Shearson Lehman Hutton, Inc. v. Tucker*, 806 S.W.2d 914, 819 (Tex.App.—Corpus Christi 1991, writ dism'd w.o.j.).

■ Although federal substantive law may govern the applicability of an arbitration agreement under the Federal Act, Texas courts nevertheless follow Texas procedure to determine whether disputed claims fall within the scope of that agreement. *Jack B. Anglin Co.*, 842 S.W.2d at 268. Specifically, the Texas Supreme Court in *Jack B. Anglin Co.* set out the procedure for determining a motion to compel arbitration, as follows:

> [T]he trial court may summarily decide whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations. However, if the material facts necessary to determine the issue are controverted, by an opposing affidavit or otherwise admissible evidence, the trial court must conduct an evidentiary hearing to determine the disputed material facts.

*Id.* at 269; *see also Prudential–Bache Securities, Inc.*, 848 S.W.2d at 806.

■ Under this procedure, if the movant's claims that arbitration is required (i.e., that a valid agreement to arbitrate exists and that the claims raised fall within the scope of that agreement) are uncontroverted, he is entitled to a summary determination by the trial court to send the matter to arbitration. In order to successfully challenge the movant's claims regarding arbitration, the opposing party must follow a two-step procedure. First, he must initially controvert the movant's claims regarding arbitration by presenting affidavits or other such evidence as would generally be admissible in a summary proceeding. Second, if the party opposing arbitration has presented such controverting evidence, the trial court must then hold an evidentiary hearing to determine those controverted issues regarding arbitration. Thus, the opposing party's failure to follow the first step of presenting proper controverting evidence denies him the right to proceed to the second step of an evidentiary hearing.

■ In the present case, Prudential put forth an arbitration agreement which, if valid, undisputedly covers the present claims asserted by the Johnstons. The Johnstons sought to escape the arbitration agreement by pleading fraud as a defense in their answer to the motion to arbitrate. However, they failed to present affidavits or any other admissible evidence to support their claim of fraud. *See Hearthshire*, 849 S.W.2d at 386–89. Therefore, since the Johnstons never properly controverted Prudential's assertions of a valid arbitration agreement, they were not entitled to a hearing, and could not prevail, on their fraud defense.

■ The Johnstons also argued that, with regard to their DTPA causes of action, the DTPA's nonwaiver provision prevented them from waiving a judicial determination. *See* Tex.Bus. & Com.Code Ann. § 17.42 (Vernon Supp.1993). However, the Texas Supreme Court has already addressed this issue, holding that federal law preempts application of the nonwaiver provision of the DTPA with regard to the enforcement of an arbitration agreement under the Federal Arbitration Act. *Jack B. Anglin Co.*, 842 S.W.2d at 271.

In conclusion, we hold that the trial court had no discretion but to summarily grant Prudential's motion to compel arbitration.

■ However, we note that the arbitration clause in the present case does not simply designate one certain forum to which the trial court may send this controversy for arbitration, but makes the forum for arbitration contingent upon the Johnstons' timely election between two possible forms of arbitration. Specifically, the arbitration clause provides that:

> Any controversy arising out of or relating to my account, to transactions with or for me or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the American Arbitration Association or the Board of Governors of the New York Stock Exchange as I may elect. If I do not make such election by registered mail addressed to you at your main office within five days after demand by you that I make such election, then you may make such decision. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

Forum selection clauses of this nature are strictly enforced, unless such enforcement would be unreasonable. *See McCain Foods Ltd. v. Puerto Rico Supplies, Inc.,* 766 F.Supp. 58, 60 (P.R.1991).

 Prudential urges this court to hold that the Johnstons have waived their right to choose the forum for arbitration by their failure to timely elect after Prudential made demand and while the case was pending before the trial court. However, we believe that the terms of the arbitration clause regarding demand of election must be interpreted in the context of the process by which a judicial controversy becomes an arbitrable controversy. We construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served or purpose sought to be achieved. *See Reilly v. Rangers Management, Inc.,* 727 S.W.2d 527, 530 (Tex.1987). Moreover, courts will avoid, when possible and proper, a construction which is unreasonable, inequitable, and oppressive. *Id.* at 530.

 The five-day time limit in the arbitration clause is triggered by Prudential's demand for such election. However, the arbitration clause does not indicate when Prudential may make this demand. Presumably, an arbitrable controversy must first exist before Prudential may demand that the Johnstons make an election of the form of arbitration. However, while a controversy is still pending in a State trial court, and before that court has ordered that it be sent to arbitration, we do not believe that it is at that point ripe for a demanded election of the form of arbitration. It seems clear that a valid demand of election could not be made while the matter of the validity of the arbitration agreement was itself still in dispute. At the time Prudential demanded arbitration in the present case, the issue of arbitrability had not yet been determined by the trial court, and the Johnstons would have made such an election at the risk of losing their right to contest the validity of the arbitration agreement in the trial court.[3] Requiring a premature election of this nature would clearly be an unreasonable and inequitable interpretation of the contract, and would amount to putting the cart before the horse.

Rather, we believe that the demand must be made, in such circumstances, concurrently or after an order of the trial court compelling arbitration and staying the judicial proceedings. Therefore, we hold that the time for the Johnstons to make an election of the form of arbitration does not begin to run until the trial court enters an order compelling the parties to submit their controversy to arbitration.

We conditionally grant a writ of mandamus directing the trial court to grant the motion to arbitrate and abate the proceedings below, in accordance with this opinion. However, the writ will not issue unless the trial court fails to comply with this opinion.

---

3. Generally, the right to object to arbitration is waived by participation in the selection of arbitrators. 6 C.J.S. *Arbitration* § 45 (1975). However, an exception may exist where the party objecting to arbitration clearly indicates that he is proceeding in the selection process under protest. *Bergquist Co. v. Sunroc Corp.,* 777 F.Supp. 1236, 1251 (E.D.Penn.1991).