SHEARSON LEHMAN BROTHERS, INC., Greg Palmacci, Dolores Edwards, and Ron Gard, Relators,

v.

The Honorable Whayland W. KILGORE, District Judge, 267th Judicial District Court, Victoria County, Texas, Respondent.

No. 13–94–036–CV.

Court of Appeals of Texas, Corpus Christi.

Feb. 28, 1994.

C.W. Flynn, Bradley W. Foster, Dallas, John D. Murphree, Victoria, for relators.

Cynthia T. Sheppard, John Griffin, Jr., Victoria, for real parties in interest.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr. and DORSEY, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

In this original mandamus proceeding, Shearson Lehman Brothers, Inc., a stock brokerage firm, and stockbrokers, Greg Palmacci, Dolores Edwards, and Ron Gard, (collectively "Shearson") seek to compel the trial court to abate the underlying lawsuit pending arbitration of the claims made against them by Dr. George Glover based on Shearson's alleged mishandling of his account. Glover resisted arbitration on the ground that the arbitration clause had been fraudulently added to the brokerage agreement. We conditionally grant the petition for writ of mandamus.

Glover sued Shearson for violations of the Deceptive Trade Practices–Consumer Protection Act (DTPA) involving certain misrepresentations which persuaded him to allow Shearson to manage his savings, and for negligence in the management of his account. In addition, in anticipation of Shearson's raising the arbitration clause in his brokerage agreement, Glover alleged that the clause had been procured by fraud and was unenforceable.

Shearson then filed a plea in abatement asserting the arbitration clause as supporting

arbitration under the Federal Arbitration Act.[1] Glover opposed the plea in abatement on the grounds alleged in his petition and supported those grounds by his affidavit which stated that Shearson's agent had made an oral agreement with him before he signed the brokerage contract, that the agent fraudulently indicated that the written contract contained nothing that the parties had not previously discussed and that Glover did not need to read it.[2] Glover was not aware that the contract contained an arbitration clause. By a supplemental affidavit, Glover clarified that he is only contending that the arbitration clause of the agreement was procured by fraud.[3]

The record shows that, although the trial judge was ready to set a hearing on the plea in abatement, both sides agreed that the matter should be decided based on the pleadings and affidavits, which were not controverted for purposes of determining whether the case should presently be abated pending arbitration. Accordingly, the trial court denied Shearson's plea in abatement based on the pleadings and affidavits on file.

■ Mandamus issues only to correct a clear abuse of discretion or violation of a legal duty when that abuse cannot be remedied by appeal. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992). Since Texas does not allow interlocutory appeal from a trial court's action on a request to abate and compel arbitration pursuant to the Federal Arbitration Act, mandamus will issue when a trial court erroneously denies such a request pursuant to the Federal Act. *Capital Income Properties–LXXX v. Blackmon*, 843 S.W.2d 22, 23 (Tex.1992); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992); *Prudential Securities Inc. v. Bañales*, 860 S.W.2d 594, 596 (Tex.App.—Corpus Christi 1993, orig. proceeding).

1. There is no dispute in the present case that the Federal Arbitration Act applies to the present agreement. 9 U.S.C. § 1 *et seq.*

2. Glover's first affidavit states, in relevant part, as follows:

   The arbitration clause in Exhibit "A" was procured by fraud by Mr. Greg Palmacci. Specifically, when he called upon me to solicit me to be his customer, all our discussions were oral. I agreed to allow him to buy and sell securities on my behalf, which Shearson Lehman Brothers did. Shearson Lehman Brothers made investments on my behalf beginning on July 31, 1990. Some 13 transactions were made by Shearson Lehman Brothers before any client agreement was sent to me. Later, on August 14, 1990, Mr. Palmacci called me and said he was faxing me a contract authorization which he needed immediately. I specifically asked him what it was, and he said it confirmed our earlier discussion and had no other terms or agreements, and that the major exchange needed my signature to allow my securities to be transferred. I specifically asked whether there was anything in the agreement which was not discussed by us when he called upon me in Victoria and he said, "No." I asked him if I needed to review it, he said no, that it was standard procedure and that it simply confirmed the earlier conversation and that it would authorize him to be my broker.

   A faxed copy was sent to me on August 14, 1990, with the statement from Mr. Greg Palmacci that they needed it back immediately. This was faxed back to him immediately.

   We did not ever discuss any agreement that I should give up my right to bring suit in case of Mr. Palmacci's wrong doing, and did not discuss arbitration or any agreement to arbitrate.

   As a result of his knowing false statements, I signed the document that Shearson Lehman Brothers contends takes away my right to legal redress. There was no consideration whatsoever for it and had he told me the truth, it never would've been signed and my account churned for more than $39,308.42 in commissions and $6,876.50 in margin interest charged to me in nine months.

3. Glover's second affidavit states, in relevant part, as follows:

   It has been brought to my attention that there is apparently a misunderstanding concerning my previous Affidavit filed concurrently with the Response to Plea in Abatement in the above captioned lawsuit on June 21, 1993.

   In that Affidavit, I am not, nor have I ever contended that the entire Agreement attached thereto as Exhibit "A" was procured by fraud. I am only contending that the provision relating to the arbitration clause contained in Agreement was procured by fraud by Mr. Greg Palmacci, since he told me that the document "confirmed" our oral conversations and that I need not review it. It is only the arbitration clause that was included as a result of fraud upon me. There was no meeting of the minds on this and I never, ever would have allowed that clause to be in a contract but for Mr. Palmacci's fraud upon me.

■ The Federal Arbitration Act is national substantive law governing questions of the validity and the enforceability of arbitration agreements under its coverage. *Moses H. Cone Memorial Hosp. v. Mercury Const.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *Prudential Securities,* 860 S.W.2d at 596. Federal law, which follows general principles of contract law, determines whether a party is bound by an arbitration clause. *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 845 (2nd Cir.1987); *Prudential–Bache Securities, Inc. v. Garza,* 848 S.W.2d 803, 807 (Tex.App.—Corpus Christi 1993, orig. proceeding); *Shearson Lehman Hutton, Inc. v. McKay,* 763 S.W.2d 934, 937 (Tex.App.—San Antonio 1989, orig. proceeding).

■ The federal act dictates enforcement of an arbitration agreement upon proof that a written agreement to arbitrate exists and that the claims raised are within the scope of that agreement. *Blackmon,* 843 S.W.2d at 23. The trial court then has no discretion but to compel arbitration and stay its proceedings pending arbitration. *Prudential Securities, Inc.,* 860 S.W.2d at 597; *Shearson Lehman Hutton, Inc. v. Tucker,* 806 S.W.2d 914, 819 (Tex.App.—Corpus Christi 1991, writ dism'd w.o.j.).

However, whether there is a valid agreement to arbitrate is an initial question for the trial court and not the arbitrators. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wilson,* 805 S.W.2d 38, 40 (Tex.App.—El Paso 1991, no writ); *McKay,* 763 S.W.2d at 936–37.

■ Thus, in the present case, we are called upon to determine whether Glover's claims of fraud raise a question for the trial court to determine concerning the validity of the written agreement to arbitrate or merely a question to be sent to arbitration along with the other claims. Because the validity and enforceability of arbitration agreements under the federal act is a question of federal law, we are guided by federal court opinions regarding claims of fraud in connection with the making of such an arbitration agreement.

■ The test generally applied by the federal courts to determine whether a claim of fraud must be decided by the trial court or sent to arbitration is as follows:

[I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language [of the Federal Arbitration Act] does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

*Bhatia v. Johnston,* 818 F.2d 418, 421 (5th Cir.1987) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967)); *see also Blackmon,* 843 S.W.2d at 23. Thus, in order to avoid arbitration, the claim of fraudulent inducement must focus specifically on the negotiation and acceptance of the arbitration provision of the contract. *See Prima Paint,* 388 U.S. at 406, 87 S.Ct. at 1807; *Bhatia,* 818 F.2d at 421.[4]

■ Fraud is not sufficiently focused upon the arbitration agreement when a party

4. We note that, under general principles of law, when the making of the underlying contract is induced by fraud, the entire contract, including all of its various clauses and subparts, may be avoided. The relevant question in determining whether fraud vitiates the contract is not whether it is attributable to any particular clause that the party now seeks to avoid, but whether the contract as a whole would have been made absent the fraudulent misrepresentation. *See Bernal v. Garrison,* 818 S.W.2d 79, 84 (Tex.App.—Corpus Christi 1991, writ denied); *Glendon Investments, Inc. v. Brooks,* 748 S.W.2d 465, 469 (Tex.App.—Houston [1st Dist.] 1988, writ denied). Therefore, we would assume that an alle-

gation of fraud sufficient to avoid the underlying contract of which an arbitration clause is a part would be sufficient to raise a question for the trial court to determine before sending the matter to arbitration. *See Gulf Interstate Engineering Co. v. Pecos Pipeline and Producing Co.,* 680 S.W.2d 879, 882 (Tex.App.—Houston [1st Dist.] 1984, writ dism'd).

However, we perceive that the federal courts have generally taken a different approach to the validity of arbitration clauses under the Federal Arbitration Act. Rather than looking to the arbitration clause as merely a part of the contract as a whole, they appear to place the arbitration clause apart as almost a separate agreement be-

merely fails to read the contract which contains an arbitration clause of which he is unaware. Even though that party may have been induced to sign the contract without reading it by someone with whom he has had prior agreements or oral understandings that did not include an arbitration agreement, if there have been no specific negotiations or representations concerning arbitration, any fraudulent inducement is considered to be directed at the signing of the contract generally and not at the arbitration clause within that contract. *See Bhatia; R.M. Perez & Associates, Inc. v. Welch,* 960 F.2d 534, 538–39 (5th Cir.1992).

In the present case, Glover admits that Palmacci, Shearson's agent, never discussed arbitration with him prior to Glover signing the written agreement. Therefore, in accordance with the federal courts' interpretation of the Federal Arbitration Act, we hold that Glover's allegation of fraud is directed at the contract as a whole, rather than at the arbitration agreement specifically, and that the trial court incorrectly failed to abate the present lawsuit pending arbitration.

Accordingly, we conditionally grant a writ of mandamus directing the trial court to abate the proceedings below pending arbitration of all claims in accordance with the agreement. However, the writ will not issue unless the trial court fails to comply with this opinion.

tween the parties for purposes of determining whether it was induced by fraud. *See Prima Paint,* 388 U.S. at 402, 87 S.Ct. at 1805. Thus, even though the underlying contract may have been fraudulently induced, if there was no hint of fraud with regard to the arbitration clause itself, then that clause is still considered valid for purposes of sending any disputes to arbitration.