**Reverse and Remand; Opinion Filed July 7, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00944-CV

**CORINTH INVESTOR HOLDINGS, LLC, Appellant**
**V.**
**MARK BENNETT, Appellee**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-14-12135**

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Myers
Opinion by Justice Myers

This is an interlocutory appeal of the trial court's order denying appellant Corinth Investor Holdings, LLC's motion to compel arbitration and granting appellee Mark Bennett's motion to declare the case non-arbitrable. Corinth argues that (1) it met its initial burden to show the arbitration agreement was valid and that Bennett's claims fell within its scope; (2) Bennett was not entitled to an evidentiary hearing on his defenses; and (3) Bennett failed to prove his defenses of waiver, revocation, and modification. We reverse and remand.

### BACKGROUND AND PROCEDURAL HISTORY

Corinth, a workers' compensation non-subscriber, operates a medical facility under Atrium Medical Center. In 2012, Corinth hired Bennett, a registered nurse, to work at Atrium. During Bennett's employment, Corinth maintained an "Employee Injury Benefit Plan" (the benefit plan) in lieu of providing workers' compensation insurance, and Corinth provided

Bennett with a document called the "Employee Injury Benefit Plan Summary" (the summary). Both the benefit plan and the summary contained arbitration provisions, and those of the former were incorporated into the latter. Bennett signed the summary and checked a box on the signature page stating, "I agree to the terms of this Agreement."

Under the benefit plan, the parties agreed to submit disputes arising from employment-related injuries to binding arbitration under the FAA. The relevant provision reads as follows:

> Arbitration. It is agreed that, except as provided in Article VII hereof, any and all disputes, claims (whether tort, contract, statutory or otherwise) and/or controversies which relate, in any manner, to this Plan or to the occupational injury, death or disease of a Plan Participant shall be submitted to final and binding arbitration under the Federal Arbitration Act. The disputes, claims and controversies subject to arbitration include, but are not limited to, those which relate in any way to the following:
>
> A. the formation, application, validity, enforceability or interpretation of the Plan;
>
> B. that the Company did not provide a safe workplace or that the Company's workplace is or was unsafe; and
>
> C. personal injuries or death sustained by a Participant in the course and scope of employment.

The summary stated that Bennett agreed that his receipt of plan benefits, such as payment of medical expenses, constituted ratification of the agreement. It also provided that revocation or modification of the agreement had to be in writing, and that Bennett could not revoke his acceptance of the agreement if the plan had paid (or became obligated to pay) benefits to or for him:

> Revocation Of Acceptance. If, after accepting this Agreement by signing below, I decide to revoke my acceptance of this Agreement, I may do so only by notifying the Company in writing by certified mail, return receipt requested, of my revocation. I understand and agree that I may not revoke my acceptance of this Agreement if the Plan has paid (or become obligated to pay) benefits to or for me. I understand and agree that I may only revoke my acceptance of this Agreement: (a) within five (5) calendar days after the date of my signature below, or (b) within five (5) calendar days after receiving written notice of a material reduction in benefits provided by the Plan.

According to Bennett's original petition, on March 19, 2013, he was cleaning a "small,

secured room" during the course and scope of his employment when, as he was doing this, a co-worker unlocked the door and opened it, striking Bennett in the head and injuring him. Bennett sought and received medical treatment for his injuries. Over a year following this injury, during which time Corinth paid thousands of dollars in medical expenses under the benefit plan to treat Bennett's injury, he attempted to revoke the agreement. He prepared the following document (the notice), which states:

> I, Mark Bennett, as a condition of my continuing employment with Atrium Medical Center of Corinth, Texas, do hereby change the terms of employment, by revoking any prior arbitration agreement that I may have previously signed or otherwise agreed to as a condition of my employment.

> As a further condition of my continued employment with Atrium, I hereby declare that all disputes of any nature, past, present, or future, shall only be pursued in the District or County Courts-at-Law of Dallas County, Texas.

> These changes in my employment status are effective immediately upon tendering of this notice to Atrium and the consideration for same is any continued employment of me at Atrium, with their knowledge of these changes, regardless of how long or how short said continued employment is.

Bennett emailed a copy of this notice to his immediate supervisor, Maria Guerrero, on April 14, 2014, and to the human resources director, Melissa Dovel, on April 21, 2014. Bennett also signed and dated the notice and posted it in various work areas, including "the cork board by the time clock," "in all three elevators," and "the employee lounge." Corinth responded by taking the notices down and telling Bennett he could not post them. On May 1, 2014, Bennett was sent home for possible violations of company policy. He was instructed to return to work on May 6, 2014. When Bennett appeared at work that day accompanied by his attorney, he was told to leave the premises. He was told to return to work on May 28, 2014, and report to the human resources office. Bennett reported to work on May 28, 2014, but the record is unclear regarding how long after that his employment relationship continued.

Bennett filed suit against Corinth on October 15, 2014, alleging it failed to provide a

–3–

reasonably safe work place; to properly instruct, supervise, and train supervisory employees; to supply reasonably safe and suitable equipment, tools, and appliances; and to establish reasonably safe rules and regulations. Corinth filed its motion to compel arbitration and to abate the proceedings on June 23, 2015, arguing the plan expressly required claims such as those being alleged by Bennett to be arbitrated. The motion was set for hearing on July 6, 2015.

Bennett responded to the motion to compel on July 2, 2015. In his response, Bennett argued that (1) Corinth conceded that the prior arbitration agreement had been superseded; (2) Bennett "revoked any prior arbitration agreement;" (3) the parties "entered into a subsequent agreement;" and (4) Corinth waived its right to arbitrate because it had not objected to venue in Dallas County. The only evidence Bennett attached to his response was an unsigned and unverified copy of the notice.

During the July 6, 2015 hearing, at which both parties were present, the trial court observed that the notice purporting to revoke the agreement was unsigned. Corinth argued the agreement could not be revoked after Bennett had received plan benefits, but the trial court said that "in theory, you can revoke, change. As long as there's a meeting of the minds. . . ." Corinth acknowledged that while, theoretically, one could revoke an agreement if there was a meeting of the minds, "[t]here's no meeting of the minds here, there's just a person saying he revoked it." Corinth also argued that the only exhibit offered in support of Bennett's theory of revocation was a copy of the notice, which was not signed by either party. Bennett's counsel argued that "[w]e have a signed one. We have one that was signed by my client. And if the Court is inclined to take evidence or simply wants to take my representations, either one is fine." The court ruled, "I think we need to have—do it the right way and have evidence and everything." Midway through Bennett's testimony, his counsel offered into evidence a copy of the notice and the email correspondence Bennett had exchanged with Maria Guerrero. Corinth objected that these

documents had not been produced in Bennett's response to the motion to compel or during discovery. After hearing additional argument concerning the objection, the trial court continued the hearing to July 20, 2015. The court instructed the parties to submit witness and exhibit lists for the forthcoming hearing.

During the time between the two hearings, Corinth filed, on July 17, 2015, a brief arguing Bennett was not entitled to an evidentiary hearing. Corinth's brief argued Bennett failed to raise a genuine fact issue to entitle himself to an evidentiary hearing because he had "merely produced an unsigned document without any supporting affidavits, purporting to revoke the arbitration agreement." Corinth added, "It is also undisputed that [Bennett's] claims fall within the scope of the arbitration agreement." At the hearing on July 20, 2015, Corinth restated its objection to the evidentiary hearing, as follows:

> I wanted to make one threshold objection to the evidentiary hearing itself, which we briefed a little bit in a brief that was submitted last week. I don't know if the Court's had an opportunity to read that.
>
> But the essence of that objection is that under Texas law—we cited the *Tipps*[1] case. The movant has the burden of showing that an arbitration agreement exists and that the dispute itself falls within the scope of that arbitration agreement.
>
> And then the proceeding itself is supposed to be a summary proceeding under that standard, and it would change into an evidentiary hearing if the person opposing the arbitration proved some kind of material fact through affidavits or other admissible evidence. And we don't believe that plaintiff in this case has met that burden to turn this into an evidentiary hearing, so I just wanted to make it clear that we do have an objection to the evidentiary hearing itself.

The trial court overruled this objection. The trial court then heard testimony from Bennett regarding his purported revocation of the agreement. At the close of hearing, the trial court denied the motion to compel. On July 20, 2015, the court signed an order denying the motion to compel arbitration and granting Bennett's motion to declare the case non-arbitratable. This

---

[1] *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266 (Tex. 1992).

appeal timely followed.

## DISCUSSION

We begin with Corinth's second issue, in which it argues Bennett was not entitled to an evidentiary hearing on his defenses.

We review orders compelling arbitration under the Federal Arbitration Act (FAA) for an abuse of discretion. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 271 (Tex. 1992). The FAA is federal substantive law that governs questions of the validity and enforceability of arbitration agreements under its coverage. *Moses H. Cone Mem'l Hosp. v. Mercury Constr*., 460 U.S. 1, 24 (1983); *In re Hospitality Emp. Group, LLC*, 234 S.W.3d 832, 835 (Tex. App.—Dallas 2007, no pet.). Federal substantive law governs the applicability of an arbitration agreement under the FAA, but Texas courts follow Texas procedure to determine whether disputed claims fall within the scope of that agreement. *Tipps*, 842 S.W.2d at 268; *In re Hospitality Emp. Group*, 234 S.W.3d at 835; *Prudential Sec. Inc. v. Banales*, 860 S.W.2d 594, 597 (Tex. App.—Corpus Christi 1993, orig. proceeding). In order to successfully challenge the submission of a claim to arbitration, the opposing party must follow a two-step procedure: (1) He must initially controvert the movant's claims regarding arbitration by presenting affidavits or other such evidence as would generally be admissible in a summary proceeding; (2) if the party opposing arbitration has presented such controverting evidence, the trial judge must then hold an evidentiary hearing to determine the controverted issues regarding arbitration. *In re Hospitality Emp. Group*, 234 S.W.3d at 835; *Prudential Sec. Inc.*, 860 S.W.2d at 597. The opposing party's failure to follow the first step of presenting proper controverting evidence denies him the right to proceed to the second step of an evidentiary hearing. *Prudential Sec. Inc.*, 860 S.W.2d at 597; *Hwa Ha Enterprises, Inc. v. Yangzi River, Ltd.*, No. 14–01–01263–CV, 2002 WL 1316219, at *2 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (mem. op.).

In the instant case, it was uncontested that there was a valid, enforceable arbitration agreement. Bennett, as noted previously, raised several defensive theories in an effort to escape arbitration. He failed, however, to present any affidavits or other such admissible evidence to support his contentions. *In re Hospitality Emp. Group*, 234 S.W.3d at 835; *Prudential Sec. Inc.*, 860 S.W.2d at 597. Therefore, since Bennett never properly controverted Corinth's assertion of a valid arbitration agreement, he was not entitled to an evidentiary hearing and could not prevail on his defenses. *See Prudential Sec. Inc.*, 860 S.W.2d at 597.

We sustain Corinth's second issue. The trial court's order denying Corinth's motion to compel arbitration is reversed and this case is remanded with directions that the court grant the motion to compel arbitration. Because of this disposition, we need not address Corinth's remaining issues.

150944F.P05

/Lana Myers/
LANA MYERS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CORINTH INVESTOR HOLDINGS, LLC,
Appellant

No. 05-15-00944-CV      V.

MARK BENNETT, Appellee

On Appeal from the 193rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-14-12135.
Opinion delivered by Justice Myers. Justices
Bridges and Francis participating.

In accordance with this Court's opinion of this date, the trial court's order denying appellant **CORINTH INVESTOR HOLDINGS, LLC's** motion to compel arbitration is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings. It is **ORDERED** that appellant **CORINTH INVESTOR HOLDINGS, LLC** recover its costs of this appeal from appellee **MARK BENNETT**.

Judgment entered this 7th day of July, 2016.