Metropolitan Prop & Liab Ins v Bridewell 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-96-220-CV

Â Â Â Â Â METROPOLITAN PROPERTY AND LIABILITY
Â Â Â Â Â INSURANCE COMPANY OF WARWICK, RHODE
Â Â Â Â Â ISLAND, AND NATHANAEL PUGH,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Relators
Â Â Â Â Â v.

Â Â Â Â Â HON. DENNIS WAYNE BRIDEWELL, JUDGE,
Â Â Â Â Â 249TH DISTRICT COURT, JOHNSON COUNTY,
Â Â Â Â Â TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Respondent
 

 Original Proceeding
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Metropolitan Property and Casualty Insurance Company of Warwick, Rhode Island
("Metropolitan") and its agent, Nathanael Pugh ("Pugh") (collectively "Relators"), seek to compel
Judge Wayne Bridewell ("Respondent") to stay the proceedings below and order the parties to
arbitration under the Federal Arbitration Act ("FAA"). 9 U.S.C.A. Â§Â§ 1-16 (West 1970 & Supp.
1996).
Â Â Â Â Â Â In 1987, Metropolitan and Roger Harmon ("Harmon"), the real party in interest, entered into
an Agency Agreement whereby Harmon would sell and Metropolitan would underwrite automobile
and homeowner insurance policies. Harmon is an independent insurance agent with many years
experience. 
Â Â Â Â Â Â The Agency Agreement contains the following provision:
Â 
X. ARBITRATION In the event of any dispute arising out of or under this agreement
between the Agent and the Company, both agree to submit such dispute to arbitration, and the
expense will be borne equally:
Â Â Â Â Â Â Â Â Â Â Â Â A.Â Â There will be three arbitrators: one will be selected by the Agent, one will be
selected by the Company, and a third will be selected by those two arbitrators.
Â Â Â Â Â Â Â Â Â Â Â Â B.Â Â The determination of the arbitrators will be final and binding on all parties hereto.
Â Â Â Â Â Â In October 1995, Metropolitan notified Harmon that it was terminating the Agency Agreement
effective April 17, 1996. Harmon filed suit against Relators on April 3, 1996, but did not have
them served with process. Harmon's petition alleges three causes of action: (1) negligent
misrepresentation; (2) tortious interference with prospective business relations; and (3) civil
conspiracy. In a letter to Pugh dated April 17, 1996, Harmon's attorneys wrote:
We represent the Harmon Insurance Agency regarding disputes it has with Metropolitan
regarding the above-referenced [Agency] Agreement. . . . [Y]ou purported to terminate the
Agreement effective April 17, 1996, citing as a basis "the unfavorable property loss
experience." The Harmon Insurance Agency disputes the claim that there has been an
unfavorable property loss experience. The Agency has done everything requested by
Metropolitan in this regard over the last several years and the experience has met all levels
demanded by you. In addition, Metropolitan has not complied with the provisions of Texas
Insurance Code art. 21.11-1.
Â 
The Agency hereby demands arbitration of these disputes pursuant to Section X of the
Agreement and appoints Al Boenker as its arbitrator. Please, have your attorney or
representative contact me . . . .
Â Â Â Â Â Â By letter dated July 19, counsel for Relators "confirmed" and "acknowledged" Harmon's
demand for arbitration and "confirm[ed] our agreement to arbitrate this dispute under the
commercial arbitration rules promulgated by the American Arbitration Association." On July 25,
Relators filed a "Motion to Transfer Venue and Motion to Dismiss, or, in the Alternative, Plea
in Abatement, Motion to Stay and Compel Arbitration, or in the Alternative, Original Answer."
Â Â Â Â Â Â On September 25, Relators filed an "Amended Motion to Stay Litigation and Compel
Arbitration" citing section X of the Agency Agreement. Relators argued that all of Harmon's
claims "arise out of or under the Agency Agreement" and thus should be compelled to arbitration. 
Harmon responded that his April 17 letter demanding arbitration referred only to two disputes: 
termination of the Agency Agreement based on "unfavorable property loss experience" and failure
to comply with the Insurance Code. Harmon argued that his letter did not refer to his causes of
action for negligent misrepresentation, tortious interference, and conspiracy and that these causes
of action did not arise "out of or under" the Agency Agreement. Respondent overruled Relators'
motion and declined to compel arbitration.
Â Â Â Â Â Â Relators now seek a writ of mandamus to compel Respondent to stay the lawsuit and order
all Harmon's claims to arbitration. A writ of mandamus may be issued to correct a "clear abuse
of discretion." Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). 
Mandamus will not issue where there is a clear and adequate remedy at law, such as a normal
appeal. Id. at 840 (citing State v. Walker, 679 S.W.2d 484, 485 (Tex. 1984)). 
ARBITRATION
Â Â Â Â Â Â Federal and state law strongly favor arbitration. Cantella & Co., Inc. v. Goodwin, 924
S.W.2d 943, 944 (Tex. 1996) (orig. proceeding) (citing Moses H. Cone Memorial Hosp. v.
Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-42, 74 L.Ed.2d 765 (1983)). A
presumption exists in favor of agreements to arbitrate under the Federal Arbitration Act. Id. The
party opposing an arbitration agreement bears the burden of defeating it. Id. 
Â Â Â Â Â Â "Once a party seeking to compel arbitration establishes that an agreement exists under the
FAA, and that the claims raised are within the agreement's scope, the trial court `has no discretion
but to compel arbitration and stay its proceedings pending arbitration." Id. (citing Shearson
Lehman Bros., Inc. v. Kilgore, 871 S.W.2d 925, 928 (Tex. App.âCorpus Christi 1994, orig.
proceeding)). A party who is erroneously denied the right to arbitrate under the FAA has no
adequate remedy at law and mandamus relief is appropriate. Id. at 945.
Â Â Â Â Â Â Relators' motion alleged that the Agency Agreement was governed by the FAA because the
subject of the contract involves interstate commerce. Attached to the motion is Pugh's affidavit
stating that the Agreement "evidences a transaction involving commerce among the several States
because the insurance policies made the subject of the Agency Agreement were issued to Texas
residents by Metropolitan, a Rhode Island Corporation." Harmon did not controvert the affidavit;
thus, the FAA applies to the agreement.


 Jack B. Anglin Co., Inc. v. Tipps, 842 S.W.2d 266,
269-70 (Tex. 1992) (orig. proceeding).
Â Â Â Â Â Â We next look to whether Harmon's claims are within the scope of the Agency Agreement. 
As we have noted, Harmon alleges in three causes of action that Relators: (1) negligently
misrepresented their willingness to write insurance for his clients; (2) tortiously interfered with
his prospective business relations with existing clients who would have otherwise continued to
procure insurance through Harmon; and (3) conspired to violate section 21.11-1 of the Texas
Insurance Code by applying economic coercion to terminate the Agency Agreement by mutual
agreement rather than by Relators' unilateral action. 
Â Â Â Â Â Â Harmon asserts that these causes of action are "separate and distinct" from the claims arising
out of Relators' termination of the agreement. He says that Relators have "committed torts that
will leave [his] clients without insurance" and that forcing his clients to change insurance carriers
has caused and will cause his clients to place their insurance with his competitors. Relators argue
that, but for the Agency Agreement, there would be no disputes between the parties.
Â Â Â Â Â Â Under the FAA, any doubts about whether the claims fall within the scope of the agreement
must be resolved in favor of arbitration. Prudential Securities, Inc. v. Marshall, 909 S.W.2d 896,
899 (Tex. 1995) (orig. proceeding) (citing Moses H. Cone Memorial Hosp., 460 U.S. at 24-25,
103 S.Ct. at 941-42). The policy in favor of enforcing arbitration agreements is so compelling
that a court should not deny arbitration "unless is can be said with positive assurance that an
arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." 
Id. (citing Neal v. Hardee's Food Sys., Inc., 918 F.2d 34, 37 (5th Cir. 1990)). In determining
whether a claim falls within the scope of an arbitration agreement, we focus on the factual
allegations of the complaint rather than the legal causes of action asserted. Id. at 900 (citing Jack
B. Anglin Co., 842 S.W.2d at 271). The burden was on Harmon to show that his claims fell
outside the scope of section X of the agreement. See id. Â Â Â Â Â Harmon does not dispute that he has
arbitrable claimsâthe termination based on "unfavorable property loss experience" and Relators'
failure to comply with the Insurance Code. However, he argues that his claims of negligent
misrepresentation, tortious interference, and conspiracy do not arise "out of and under" the
agreement. Looking at the factual allegations in Harmon's petition, we cannot conclude with
"positive assurance" that the claims alleged are not "factually intertwined" with the arbitrable
claims. Id. 
Â Â Â Â Â Â Thus, Relators have established that the Agency Agreement exists under the FAA and that the
claims raised are within the scope of that agreement. Respondent had no discretion but to compel
arbitration and stay the proceedings pending arbitration. Cantella, 924 S.W.2d at 944-45.


 
Â Â Â Â Â Â Â We conditionally grant the writ of mandamus and direct Respondent to order that all claims
proceed to arbitration. Because we are confident that Respondent will comply with our decision,
the writ will issue only if he fails to do so.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â BILL VANCE
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Before Chief Justice Davis,
Â Â Â Â Â Â Â Â Â Â Justice Cummings, and
Â Â Â Â Â Â Â Â Â Â Justice Vance
Writ of mandamus conditionally granted
Opinion delivered and filed November 20, 1996
Publish



e to have
him prosecuted.  In simpler terms, Braneff is alleging that Troutmen attempted
to frame him for the forged deed.Â  Braneff asserts that, in addition to the
above evidence, the following summary-judgment evidence (from his affidavit)
raises a fact issue on TroutmenÂs state of mind as to lacking probable cause:


 Braneff
 helped out Troutmen in her law practice in Bryan, where he observed her
 use audio and video dubbing equipment to created forged sound recordings.Â 
 He also observed her using a photocopier to create forged documents:


Â 

I also had occasion to be present when
she was creating false documents by cutting portions out of a Xerox or other
photographic process copy of one document, taping it to another page over
printing on another document, and copying it to create a new document which she
would use in evidence as an original, or as a copy of an original document in
her litigation practice.Â  It would have been easy for her to create an envelope
with her attorneyÂs return address, and to create the deed which I was charged
with forging, in order to attempt to get me in trouble.Â  I also saw her
practicing writing the signatures of others until she could create a good copy
of someoneÂs signature and place it on a document to that personÂs detriment.

Â 


 Troutmen
 forged BraneffÂs signature on a post-divorce claim for dental expense
 benefits and on the contract for deed between them and their daughter.


Â 


 Troutmen
 made many complaints about Braneff to various law enforcement officers in
 Brazos and Robertson Counties, but Braneff was never arrested on any
 charge.


Â 


 Troutmen
 claimed that Braneff had burned two houses that were on his Robertson
 County property and that were burned down on November 22, 2002, while
 Braneff was on his way to Louisiana.Â  Braneff was questioned by Robertson
 County sheriffÂs deputies about those fires.


Â 


 Troutmen
 accused Braneff of burning down the house on the Hopkins County land, and
 when Braneff was not arrested for it, she accused their daughterÂs husband
 for burning it down as a favor to Braneff.Â  In a telephone conversation
 Troutmen told Braneff that he had done her a favor by burning down that
 house because she received $90,000 in insurance, but Braneff told her he
 had nothing to do with the house burning.Â  Before then, Troutmen,
 accompanied by her new husband, visited Braneff and tried to persuade him
 to burn the Hopkins County house, saying that she would get $80,000 for
 the house and for the divorce partition.Â  Braneff declined, even though
 Troutmen pointed out that turpentine could be used as the accelerant and
 would be undetectable because the house was largely made of pine wood.


Â 


 Braneff
 was questioned by a Robertson County sheriffÂs deputy about Troutmen
 wanting to have Braneff killed.


Â 

Finally, Braneff points to the July 8,
2002 affidavit of Orvil Schrum,[4]
TroutmenÂs brother, who discusses TroutmenÂs attempts to persuade Schrum to
kill Braneff or have someone kill Braneff:Â  ÂFor the past three years, my
sister Ann has been attempting to persuade me to kill Ron Braneff, either as a
favor to her or for money, or, if I would not do so, to employ someone else to
do so.ÂÂ  SchrumÂs affidavit discusses several specific attempts.Â  It concludes
with the following:

Also I recall that in the Spring of last
year, 2001, at her office in Brazos County, Texas, Ann requested me to be a
false witness that Ron beat her up and cut her, but I did not see that and
could not so testify.Â  This was before she drove with me over to see Ron.Â  By
the time I got to Robertson County where Ron was living, I had chickened out
completely.Â  Ann said she wanted me as a witness because she was going to claim
that Ron hurt her, so that she could obtain a restraining order.Â  She called
the police by dialing 911.Â  When the Robertson County SheriffÂs Officers came,
I told them that I was there the whole time and had not seen Ron harm Ann in
any way.

Â 

The critical question is TroutmenÂs
state of mind.Â  See Kroger, 216 S.W.3d at 795 (ÂAlthough the critical question in this case
was KrogerÂs state of mind, Suberu produced no evidence that Kroger initiated
her prosecution on the basis of something other than a reasonable belief that
she was guilty.Â).

The above evidence
must be viewed in the light most favorable to Braneff, the nonmovant.Â  See
Ridgway, 135 S.W.3d at 601.Â  We conclude that Braneff has rebutted the probable-cause
presumption by producing some evidence that the motives, grounds, beliefs, or other information
on which Troutmen acted did not constitute probable cause. Â See Kroger, 216
S.W.3d at 793; Digby v. Texas Bank, 943 S.W.2d 914, 925 (Tex. App.ÂEl
Paso 1997, writ denied).Â  He produced evidence of prior bad relations with
Troutmen, her alleged preexisting debt to him, and her private motivation to
harm him.Â  See Kroger, 216 S.W.3d at 795; see also South Texas
Freightliner, Inc. v. Muniz, 288 S.W.3d 123, 133-34 (Tex. App.ÂCorpus
Christi 2009, pet. denied); Tranum v. Broadway, 283 S.W.3d 403, 415-16
(Tex. App.ÂWaco 2008, pet. denied) (plurality op.).Â  Accordingly, granting a
no-evidence summary judgment on this element was error.

Malice

Â 

Â Â Â Â Â Â Â Â Â Â Â  A plaintiff must establish
that the defendant acted with malice, which is defined as ill will, evil
motive, gross indifference, or reckless disregard of the rights of others.Â  Digby,
943 S.W.2d at 922.Â  It is proved by direct or (usually) circumstantial
evidence.Â  Id.Â  The absence of probable cause can provide circumstantial
evidence of a hostile or malicious motive.Â  Id. at 923.

Â Â Â Â Â Â Â Â Â Â Â  TroutmenÂs traditional
motion sought summary judgment on the malice element with GilmoreÂs and LongÂs
deposition testimony that they both had the opinion that Troutmen was not
acting with malice toward Braneff.Â  Braneff argues that the same evidence
relating to TroutmenÂs lack of probable cause is evidence that creates a fact
issue on malice.Â  We must
consider all the evidence in the light most favorable to Braneff, indulging
every reasonable inference in favor of him and resolving any doubts against TroutmenÂs
motion. Â See Mayes, 236 S.W.3d at 756.Â  We agree with Braneff; a genuine issue
of material fact exists. Â See
Digby, 943 S.W.2d at 925-26; see also Tranum, 283 S.W.3d at 418.Â 
Accordingly, either a traditional or no-evidence summary judgment on the malice
element was error.

We sustain BraneffÂs two issues, reverse
the trial courtÂs judgment as to BraneffÂs claim for malicious prosecution, and
remand this case for further proceedings.

Â 

Â 

Â 

REX D. DAVIS

Justice

Â 

Before
Chief Justice Gray,

Justice Reyna, and

Justice Davis

(Chief Justice Gray concurring with opinion)

Reversed
and remanded

Opinion
delivered and filed November 17, 2010

[CV06]









[1] Braneff also sued Troutmen for
conversion and for partition of community property that had not been divided in
their divorce.Â  Troutmen moved for and obtained summary judgment on those two
claims as well, but BraneffÂs brief is expressly limited to his claim for
malicious prosecution.





[2] The envelope was from the law firm of
TroutmenÂs divorce attorney.

Â 





[3] AlbertÂs testimony in BraneffÂs
criminal trial corroborated BraneffÂs explanation for how he received the April
21, 2003 deed.





[4] At the summary-judgment hearing,
Troutmen orally objected to SchrumÂs affidavit as irrelevant, and the trial
court sustained the objection.Â  However, objections to summary-judgment
evidence must be in writing.Â  See City of Houston v. Clear Creek Basin
Auth., 589 S.W.2d 671, 677 (Tex. 1979).Â  SchrumÂs affidavit is thus before
us.