**ENVIRO PETROLEUM, INC.**

v.

**KONDUR PETROLEUM, S.A., Setiawan Djody d/b/a The Setdco Group, Far Eastern Hydrocarbons, Ltd., Bakrie Group, Indra Bakrie, Aburizal Bakrie and Nirwan Bakrie**

No. Civ.A. G–99–405.

United States District Court,
S.D. Texas,
Galveston Division.

Dec. 20, 1999.

Richard Lee Melancon, Melancon and Hogue, Friendswood, TX, for Enviro Petroleum, Inc., plaintiff.

Charles W. Cunningham, McKool Smith, Dallas, TX, for Kondur Petroleum, S.A., Far Eastern Hydrocarbons, Ltd., defendants.

Robert J. King, Liddell Sapp et al., Houston, TX, for Setiawan Djody dba The Sedtco Group, defendant.

## ORDER DENYING KONDUR PETROLEUM'S AND SETIAWAN DJODY'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

KENT, District Judge.

### REQUEST FOR SUPPLEMENTAL BRIEFING

Plaintiff Enviro Petroleum and Defendants Kondur Petroleum and Defendant Setiawan Djody entered into a contract to build and operate a multi-million dollar oil

refinery, to be located in the Republic of Kazakhstan. Djody and Kondur were to provide the financing for the project. Enviro was to oversee construction of a "skid-mounted refinery" which was later to be shipped to Kazakhstan. Needless to say, the present action was instituted because the financing was never forthcoming. Plaintiff brought suit in this Court alleging breach of contract, fraud, and misrepresentation. Now before the Court is Defendant Setiawan Djody's Motion To Dismiss Pursuant to Rule 12(b)(2), filed August 2, 1999, and Kondur Petroleum's and Far Eastern Hydrocarbon's Joint Motion to Dismiss For Lack of Personal Jurisdiction, filed August 31, 1999. For reasons explained more fully below, Djody's Motion is **DENIED,** and Kondur Petroleum's Motion is **DENIED.** At this time, the Court withholds judgement as to Far Eastern Hydrocarbon's Motion.

## I. FACTUAL SUMMARY

Djody, d/b/a the Setdco Group, Kondur Petroleum, and Enviro entered into a contract known to the parties as the "Cooperation Agreement Regarding the Kyzyl–Orda Refinery Project" dated August 14, 1996 ("Contract"). Enviro was to oversee the design and construction of a skid mounted refinery. Once built, this refinery was to be shipped to the Republic of Kazakhstan. Enviro had previously negotiated all the necessary agreements, related to the refinery project, with the Kazakhstani authorities.

Kondur and Djody were to supply the necessary financing, expected to be about $80 million. Once the refinery was up and running, Enviro, Kondur, and Djody were each to receive ⅓ of the profits. The financing was never forthcoming, and the project was never completed. Enviro has brought suit alleging breach of contract, fraud, and misrepresentation. As to the fraud and misrepresentation causes of action, Enviro alleges that even prior to the execution of the Contract, Defendants had no intention of providing the necessary financing. According to Enviro, Defendants were only interested in exploiting

Enviro's knowledge and expertise related to overseas opportunities in the oil business: Defendants subsequently used Enviro's knowledge and expertise to execute various lucrative contracts which excluded Enviro.

Plaintiff Enviro is a Texas corporation with its principal place of business in Houston. Roger Shani is the owner and chairman of Enviro. Defendant Kondur is a foreign corporation, organized under the laws of Indonesia, with its principal place of business in Jakarta, Indonesia. Defendant Djody is an international businessman whose principal place of operations is Jakarta. Plaintiff alleges that Defendant Setdco Group is Djody's alter ego. Kondur is or was a wholly owned subsidiary of Defendant Far Eastern Hydrocarbon, which is a foreign corporation organized under the laws of Indonesia, with its principal place of business in Indonesia.

On September 27, 1999 Plaintiff filed its First Amended Complaint, adding as Defendants The Bakrie Group, Indra Bakrie, Aburizal Bakrie and Nirwan Bakrie. These newly added Defendants have not submitted any Motions for the Court's consideration. What is now before the Court is Defendant Setiawan Djody's Motion To Dismiss Pursuant to Rule 12(b)(2), filed August 2, 1999, and Kondur Petroleum's and Far Eastern Hydrocarbon's Joint Motion to Dismiss For Lack of Personal Jurisdiction, filed August 31, 1999.

## II. ANALYSIS

In Federal Court, personal jurisdiction over a nonresident defendant is proper if: (1) the defendant is amenable to service of process under the forum state's long-arm statute; and (2) the exercise of personal jurisdiction over the defendant is consistent with due process. *See Jones v. Petty–Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1067 (5th Cir.1992). The Texas long-arm statute authorizes service of process on a nonresident defendant if the defendant is determined to be "doing business" in Texas. *See* Tex.Civ.Prac. &

Rem.Code Ann'. § 17.042. Because the phrase "doing business" has been interpreted to reach as far as the United States Constitution permits, the jurisdictional inquiry under the Texas long-arm statute collapses into a single due-process inquiry. *See Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir.1993).

◼ Whether the exercise of personal jurisdiction over Defendants is consistent with the Due Process Clause of the United States Constitution likewise requires a two-pronged inquiry. First, the Court must conclude that Defendants have "minimum contacts" with Texas. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Second, the Court must determine that requiring Defendants to litigate in Texas does not offend "traditional notions of fair play and substantial justice." *Id.; see also Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir.1994); *Ruston Gas Turbines*, 9 F.3d at 418. The "minimum contacts" aspect of due process can be satisfied by either finding specific jurisdiction or general jurisdiction. *See Wilson*, 20 F.3d at 647.

◼ If the conduct of a defendant that supports personal jurisdiction is related to a stated cause of action, personal jurisdiction is known as "specific jurisdiction." *See Ruston Gas Turbines*, 9 F.3d at 418–19. The minimum contacts prong for specific jurisdiction can be satisfied by a single act if the nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (holding that a defendant establishes minimum contacts by purposely engaging in conduct directed toward the forum state "such that [the defendant] should reasonably anticipate being haled into court there"); *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958); *see also Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir.1990) ("It is well settled that spe-

cific jurisdiction may arise without the nonresident defendant's ever stepping foot upon the forum state's soil").

◼ Alternatively, if a defendant has insufficient contacts related to a stated cause of action to support specific jurisdiction, contacts unrelated to the cause of action may confer general jurisdiction. However, these contacts with the foreign state must be both "continuous and systematic" and "substantial." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984); *Villar v. Crowley Maritime Corp.*, 990 F.2d 1489, 1496 (5th Cir.1993) *abrogated on other grounds, Marathon Oil Co. v. A.G. Ruhrgas*, 145 F.3d 211, 224 (5th Cir.1998).

At the outset, the Court notes that although the burden is on Plaintiff, he need only make a prima facie showing of jurisdiction, and his allegations in that regard are to be taken as true unless controverted; moreover, any conflicts are to be resolved in his favor. *See Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 785 (5th Cir. 1990). The Court will examine Plaintiff's arguments with respect to each of the Defendants.

### A. Djody, d/b/a Setdco Group and Kondur Petroleum

◼ On the basis of the competent evidence submitted by Enviro, the Court concludes that Enviro has made a prima facie showing of the following facts which are relevant for purposes of determining the propriety of exercising personal jurisdiction over Defendants. Kondur and Djody, through his alter ego the Setdco Group, were parties to a contract with Enviro. As previously described, this contract concerned the design and construction of an oil refinery, which was to be transported to the Republic of Kazakhstan. According to Article 2.2 of the contract, Setdco and Kondur were to contribute the necessary financing for this project, estimated to be about $80 million. Article 2.2 further provides that Setdco and Kondur were to

"share the risk of financing the Project equally, i.e. 50% by each party."

Article 2.3 sets out various responsibilities to be shared by Enviro, Kondur and Setdco. Of particular significance to the personal jurisdiction analysis, Article 2.3 provides that the shared responsibilities included:

▲ Selection of EPC firm (Engineering, Procurement & Construction) who will design and construct the Refinery

▲ Negotiation and execution of "Lump–Sum–Turn–Key" ("LSTK") Contract with EPC firm

▲ Project Management

▲ Selection of Technology

▲ Plan start-up, commissioning

▲ Operations & Maintenance (O & M) of the Refinery

Paul Vickery, a resident of Houston, was employed by Djody as Director of International Project Development. Enviro, a Houston based corporation, did not initiate the contacts with Defendants. On the contrary, it appears that Defendants were interested in overseas investment opportunities in the oil business, and employed Vickery to *seek out* Enviro, in Texas, and negotiate a mutually satisfactory contract. Vickery, in his capacity as agent to Djody and likely Kondur as well, helped draft the terms of the contract, and did so in Houston.

Article 2.3 of the contract indicates that the parties expressly contemplated the selection of EPC firms, negotiation of contracts with those EPC firms, and project oversight, by Enviro, over the construction of the refinery. Enviro, as a Houston based oil company, not surprisingly selected a variety of Texas based firms to perform the EPC work, including Petrofac, a firm based in Tyler, Texas. Not only was it foreseeable to Djody and Kondur that Enviro would select Texas based firms to fulfill its obligations under Article 2.3 of the contract, but Djody and Kondur *knew* and *approved* of the use of Texas based EPC firms, even before exe-

cution of the contract. There appears to have been voluminous correspondence between the parties concerning the formation of the contract, the selection of the EPC firms, and other matters.

Not only did Defendants know and approve of the construction of the refinery in Texas, it is also apparent that Defendants knew that, once built, Enviro would be managing the refinery out of their Houston facilities. The project was to be insured by a Texas company. It appears that Enviro's share of the profits would have been mailed to Enviro in Houston. After execution of the contract, Enviro partially performed under the contract, in Texas, and Defendants were well aware of this fact.

The Court concludes that by having actively solicited a contract in Texas, with a Texas firm, and having negotiated a contract, in Texas, which called for substantial, long-term performance in Texas, Djody and Kondur have certainly established sufficient "minimum contacts" with the state of Texas so as to support the exercise of specific jurisdiction over them in this breach of contract action. *See Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183 (finding that a defendant establishes minimum contact by purposely engaging in conduct directed toward the forum state "such that the [defendant] should reasonably anticipate being haled into court there."); *Jones*, 954 F.2d at 1068–69 (observing that the Fifth Circuit "has consistently looked to the place of contractual performance to determine whether the making of a contract with a Texas resident is sufficiently purposeful to satisfy minimum contacts" and further noting that "the place of contracting and the law governing the contract, while not necessarily determinative, are relevant factors for determining purposeful activity."); *Barnstone v. Congregation Am Echad*, 574 F.2d 286, 288 (5th Cir.1978) ("[I]t is the place of performance rather than execution, consummation or delivery which should govern the determination of [personal] juris-

diction."); *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 492 (5th Cir.1974) ("performance, contemplated or accomplished, is the touchstone"); *Beechem v. Pippin,* 686 S.W.2d 356, 362 (Tex.App.— Austin, no writ) (active solicitation of a contractual relationship with a Texas resident is sufficient to establish personal jurisdiction over non-resident defendant).

Under the circumstances, Kondur and Djody should have "reasonably anticipated" that if they breached their contract with Houston based Enviro, they might be haled into a Texas court. Indeed, on these facts, Defendants should not merely have "anticipated" that Plaintiff would sue in Texas; Defendants should have positively *expected* Plaintiffs to choose a Texas forum. The Court is satisfied that Kondur and Djody have sufficient "minimum contacts" with the state of Texas to justify this Court's exercise of personal jurisdiction over them.

■ Having concluded that Defendants have sufficient minimum contacts with Texas, the Court turns to the next prong of the personal jurisdiction inquiry: whether requiring Defendants to litigate in Texas comports with "traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158. In making this determination, five factors are considered by the Court: the defendant's burden; the interests of the forum state; the plaintiff's interest in convenient and effective relief; the interstate judicial system's interest in efficient resolution of controversies; and the shared interest of the several states in furthering fundamental substantive social policies. *See Asahi Metal Indus.,* 480 U.S. at 113, 107 S.Ct. at 1033; *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *Ruston Gas Turbines,* 9 F.3d at 421. Once a court has found that minimum contacts exist, "[o]nly in rare cases ... will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the fo-

rum state." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 231 (Tex.1991). Indeed, once minimum contacts are established, a defendant must present "a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184.

■ No doubt Setdco and Kondur will experience some slight inconvenience by being forced to litigate this matter in a Texas forum. But in light of the fact that Defendants are highly sophisticated international business concerns, with multi-million dollars projects scattered throughout the world, it is hard for this Court to find it too burdensome to Defendants to answer in a Texas forum for their alleged breach of a Texas contract they actively solicited from a Texas corporation. *See Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183 ("because modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity, it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity.") (internal quotations omitted). The state of Texas obviously has a strong interest in seeing that Texas corporations have a Texas forum to litigate breach of contract actions with nonresident defendants who have actively solicited a contract in Texas. As compared to a forum in Indonesia, the provision of a Texas forum may go a long way towards satisfying Plaintiff's interest in "obtaining convenient and effective relief." *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564. The Court concludes it is hardly contrary to "traditional notions of fair play and substantial justice" to require Kondur and Setdco to appear in a Texas forum.

The Court finds that the activities of Kondur and Setdco in soliciting, negotiating, and executing the contract at issue, established minimum contacts sufficient to

support the exercise of specific jurisdiction in a suit alleging breach of that contract. It is not contrary to traditional notions of fair play and substantial justice to require Setdco and Kondur to defend in a Texas forum. Accordingly, the exercise of personal jurisdiction over Kondur and Setdco is consistent with the due process clause of the 14th Amendment. Kondur's and Setdco's Motion To Dismiss for Lack of Personal Jurisdiction is **DENIED.**

### B. Far Eastern Hydrocarbons

The Court is not satisfied with the state of Plaintiff's pleadings and briefing with respect to the existence of personal jurisdiction over Defendant Far Eastern Hydrocarbons. Kondur Petroleum is or was a wholly owned subsidiary of Far Eastern. While the Court agrees that there is personal jurisdiction over Kondur, Plaintiff's case for personal jurisdiction over the parent corporation, Far Eastern, is at best murky. The unclarity is partly due to Plaintiff's promiscuous use of the term "Defendants," a generic term which on any given occurrence may or may not refer to Far Eastern. In light of the fact that only Defendants Kondur and Setdco were signatories to the contract, it is difficult for the Court to determine on what basis Plaintiff believes personal jurisdiction exists over Far Eastern.

Generally, one corporation's contacts with a forum cannot serve as the basis for holding a parent or subsidiary corporation amenable to personal jurisdiction in that forum. *See Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983) (citing 2 J. Moore & J. Lucas, Moore's Federal Practice ¶ 4.25[6], at 4–272 (2d ed.1982)). However, under certain circumstances, a sufficiently close relationship between a parent and its subsidiary may subject one corporation to personal jurisdiction based on the contacts of the other. *See id.* (citing *Walker v. Newgent*, 583 F.2d 163, 167 (5th Cir.1978); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 492 (5th Cir.1974); *Turner v. Jack Tar Grand Bahama, Ltd.*, 353 F.2d 954, 956 (5th Cir.1965)). To impute the contacts of one corporation to another, there must be evidence of one corporation exercising sufficient control over the other to make the other its agent or alter ego. *See id.; see also Donatelli v. National Hockey League*, 893 F.2d 459, 465 (1st Cir.1990). The United States Court of Appeals for the Fifth Circuit has articulated a list of factors to determine whether corporate entities are sufficiently related to impose jurisdiction on one based on the forum contacts of the other. Those factors include: the amount of stock owned by the parent of the subsidiary; whether the two corporations have separate headquarters; whether the two corporations share common officers and directors; whether corporate formalities are observed; whether separate accounting systems are maintained; whether one exercises complete authority over the other's general policy; and whether one exercises complete authority over the other's daily operations. *See Hargrave*, 710 F.2d at 1160.

At this time, the Court **DECLINES TO RULE** on Far Eastern's Motion to Dismiss for Lack of Personal Jurisdiction. Plaintiff is given **30 DAYS,** from the date of this Order, to prepare and submit supplemental briefing directed *specifically* to the existence of personal jurisdiction over Far Eastern. Far Eastern is given **15 DAYS,** from the date of Plaintiff's submission, to reply to Plaintiff's Supplemental Brief. Neither brief should exceed **25 pages,** exclusive of exhibits and attachments.

### III. Arbitration

Even at this nascent stage of the litigation, the Court has been forced to wade through a nearly foot high stack of briefs. This case is already showing a marked potential to become muddled. Consequently, the Court proposes to refocus the efforts of counsel towards what the Court perceives to be the heart of the case: the validity of the arbitration provision in Article 4 of the Contract.

Article 4 provides:

This Agreement shall in all respects be interpreted in accordance with the Laws of Switzerland.

In case of any dispute or disagreement between the parties hereof regarding this Agreement, such dispute or disagreement shall be resolved amicably. Failing amicable resolution, the dispute or disagreement shall be settled by means of arbitration according to the Rules of Arbitration of International Chamber of Commerce by a sole arbitrator approved in accordance with the said Rules. The arbitration procedures will be carried out in Geneva, Switzerland.

Because the Court considers the current state of the briefing on this crucial issue to be unsatisfactory, the parties are invited to submit supplemental briefing focusing *exclusively* on the issue of arbitration.

The following observations are offered in the hopes that they will sharpen the presentation of the arguments in the supplemental briefing.

### A. Federal Arbitration Act

Enviro is cautioned that if Article 4 of the Contract is indeed a valid arbitration clause, under the Federal Arbitration Act, this Court *must* issue a stay. *See* 9 U.S.C. § 3; *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985); *Sedco, Inc. v. Pemex*, 767 F.2d 1140, 1147 (5th Cir.1985). If Enviro, Setdco, and Kondur, three highly sophisticated commercial entities, have agreed to a valid arbitration clause, this Court has neither the power nor the inclination to rewrite their agreement so as to better conform to Enviro's present desire to avoid arbitration.

### B. Waiver of Right to Arbitrate

"There is a strong presumption against waiver of arbitration." *Subway Equip. Leasing Corp. v. Forte,* 169 F.3d 324, 326 (5th Cir.1999); *see also Lawrence v. Comprehensive Bus. Servs. Co.,* 833 F.2d 1159, 1164 (5th Cir.1987) ("Waiver of arbitration is not a favored finding and there is a presumption against it."). The Court frankly does not understand Enviro's argument that Defendant Djody has waived his right to arbitrate. Enviro claims that it demanded arbitration on numerous occasions, and there is some suggestion in the record that Enviro did threaten to commence arbitration proceedings if the promised financing was not soon forthcoming. Yet Enviro never actually initiated such proceedings, in this Court or any other forum. Indeed, Enviro is not now asking this Court to enforce the arbitration agreement. Moreover, the assertion that Enviro was keenly desirous of arbitration in the past, and was on the verge of actually initiating such proceedings, is in obvious tension with Enviro's present claim that arbitration is prohibitively expensive and ineffective. If Enviro truly cannot afford to arbitrate its claims against Defendants now, how could it have afforded to arbitrate its claims against Defendants in the past?

It appears to the Court that Enviro's waiver argument boils down to the claim that Djody waived his right to arbitrate because he did not actively assist and partially finance Enviro's desire to pursue a claim against him. But it was *Enviro*, not Djody, who was dissatisfied with the turn of events after execution of the Contract. It strikes the Court as absurd to suggest that a Defendant must initiate and finance a claim against itself on pain of waiving an otherwise valid contractual arbitration provision.

Finally, in light of the fact that Djody immediately moved to stay and enforce the contractual arbitration provision, the Court invites Enviro to explain how Djody has waived his right to arbitrate, since he has not "substantially invoked the judicial process." *See Miller Brewing Co. v. Fort Worth Distrib.,* 781 F.2d 494, 497 (5th Cir.1986) ("Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party"); *Walker v. J.C. Bradford & Co.,* 938 F.2d 575, 578

(5th Cir.1991) (holding that "[p]re-suit activity does not invoke the judicial process and cannot support a finding of waiver"). Enviro's citations to authorities outside the Fifth Circuit are not particularly helpful to this Court.

### C. Fraudulent Inducement

In order for Enviro to present a claim that this Court can adjudicate, Enviro must show that the arbitration clause *itself*, as opposed to the contract as a whole, was induced by fraud. *See Shearson Lehman Bros., Inc. v. Kilgore*, 871 S.W.2d 925, 928 (Tex.App.—Corpus Chrisi 1994, no writ); *Gutierrez v. Academy Corp.*, 967 F.Supp. 945, 946–47 (S.D.Tex.1997) (Kent, J.). The Court is unpersuaded by Enviro's initial argument that the arbitration clause was itself fraudulently induced. Enviro has not identified any sort of material misrepresentation made by Defendant with respect to the arbitration provision.

In essence, Enviro seems to be complaining that Djody failed to fully inform Enviro of the potentially adverse consequences of the arbitration provision. However, this was an arms-length commercial transaction between two highly sophisticated business entities; Djody certainly did not stand in a fiduciary relationship towards Enviro. Consequently, the Court does not understand why Djody's factual omissions in this regard amounts to fraudulent inducement of the arbitration agreement. *See Palm Harbor Homes, Inc. v. McCoy*, 944 S.W.2d 716, 722 (Tex.App.—Ft. Worth 1997, no writ) (finding mobile home seller had no duty to disclose effects of arbitration provision in sales contract because "a party has an affirmative duty to disclose only where a confidential fiduciary relationship exists or where a party later learns that a previous affirmative representation was false."). If the mobile home seller in *Palm Harbor Homes* had no affirmative duty to disclose the effects of an arbitration agreement to an inexperienced buyer in the context of a retail consumer transaction, it is hard to understand why Djody had an affirmative obligation to disclose the effects of an arbitration clause to a sophisticated Houston oil businessman negotiating a half-billion dollar Kazakhstan oil refinery contract. Enviro is invited to submit to the Court's attention whatever authority it can find for the proposition that an arbitration agreement between sophisticated business entities can be invalidated on the basis of mere fraud in the omission.

### D. Unconscionability

Plaintiff argues that the arbitration provision. is unconscionable because Enviro cannot afford to pay the fee necessary to initiate the arbitration proceedings. Plaintiff bears the burden of establishing that the arbitration provision is unconscionable. *See Arkwright–Boston Mfgr's Mutual Ins. Co. v. Westinghouse Elec. Corp.*, 844 F.2d 1174, 1184 (5th Cir.1988). By its own admission, Enviro is a major Houston based business with enough savvy and sophistication to broker an oil refinery project in the Republic of Kazakhstan. It is absolutely preposterous for such a company to complain that it cannot afford to arbitrate a dispute related to one of its multi-million dollar business contracts.

Moreover, in response to a question about the arbitration provision prior to the execution of the contract, Enviro's chairman, Roger Shani, wrote "Switzerland arbitration ok, but this is not a major point." In light of such written comments by a sophisticated businessman, the Court is hard-pressed to understand how Enviro proposes to make out a case of procedural unconscionability. The arbitration provision cannot be held unconscionable unless it is *both* substantively and procedurally unconscionable. *See id.* ("Under Texas law, Arkwright must prove both substantive and procedural unconscionability to prevail on the unconscionability issue."). The Court would appreciate any light Plaintiff might be able to shed on this issue.

### E. Enforceability of Arbitral Award

The Court is not satisfied with Djody's response to Plaintiff's concerns that any

arbitral award would be effectively unenforceable in Indonesia. It appears that Djody has simply argued that it would be improper for this Court to prejudge the Indonesian legal system on the basis of Plaintiff's allegations. As a practical matter, this is an exceedingly tepid response given that Plaintiff has indicated genuine concern about the ultimate enforceability of an arbitral award.

The Court has not made a determination that an award would be unenforceable in Indonesia, but does invite the Defendants to explain why this issue should not be of concern to this Court. In particular, the Court would find it helpful for the parties to brief the issue of whether an eventual arbitral award could be enforced in a forum outside Indonesia. Defendants should also identify any steps it might be willing to take to ensure that arbitration is not a pointless exercise in the event the arbitrator issues a ruling adverse to Defendants.

The parties are also invited to submit their thoughts about the proper location for the arbitration proceedings, should the Court decide to order arbitration. Obviously Switzerland is one possibility, but a New York or Houston arbitral forum might also be agreeable to the parties.

Plaintiff's and Defendants' Supplemental Briefs focusing *exclusively* on the issue of arbitration should not exceed **25 pages**, exclusive of exhibits and attachments. Plaintiff is given **30 days** from the date of this Order in which to submit the Supplemental Brief. Djody is given **15 days** from the date of Plaintiff's submission in which to reply. The Court notes that Kondur has not yet moved to enforce the arbitration provision, although it indicated a desire to do so in its August 31, 1999 Motion to Dismiss for Lack of Personal Jurisdiction. In the event Kondur elects to move for enforcement of the arbitration provision, Kondur is invited to reply to Plaintiff's Supplemental Brief, subject to the same limitations as apply to Djody.

## IV. CONCLUSION

For the reasons set forth above, Djody's and Kondur's Motions to Dismiss for Lack of Personal Jurisdiction are **DENIED**. No ruling has yet been made on Far Eastern's Motion to Dismiss for Lack of Personal Jurisdiction, but Plaintiff is given **30 DAYS** from the date of this Order to submit supplemental briefing specifically addressing this issue. Far Eastern is given **15 DAYS** from the date of Plaintiff's submission of its Supplemental Brief in which to reply. Neither brief should exceed **25 pages,** exclusive of exhibits and attachments.

Enviro is invited to submit an additional Supplemental Brief directed exclusively to the issue of **ARBITRATION** within **30 DAYS** of the date of this Order. Djody is given **15 DAYS** from the date of Plaintiff's submission in which to reply. Neither brief should exceed **25 pages,** exclusive of exhibits or attachments. In the event Kondur elects to move for enforcement of the arbitration provision, Kondur is invited to submit a reply to Plaintiff's Supplemental Brief.

Defendants Setdco and Kondur are **ORDERED** to file no further motions, including motions to reconsider and the like, with respect to the Court's denial of their Motions to Dismiss for Lack of Personal Jurisdiction. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**